UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AAKASH DALAL,

Plaintiff,

v.

DEPARTMETN OF JUSTICE, et al.,

Defendants.

Civil Action No. 16-1040 (TJK)

**MEMORANDUM IN SUPPORT OF THE FEDERAL BUREAU OF
INVESTIGATION'S RENEWED MOTION FOR SUMMARY JUDGMENT**

MATTHEW M. GRAVES
D.C. Bar No. 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

ANNA D. WALKER
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
Phone:  (202) 252-2544
anna.walker@usdoj.gov

*Attorneys for the United States of America*

Dated: February 23, 2024

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................................... ii

background ................................................................................................................................... 1

LEGAL STANDARD .................................................................................................................. 1

ARGUMENT ............................................................................................................................... 3

      I.      The Sole Remaining Portion of Plaintiff's Requests at Issue in this Case Seeks Records, For Which Conducting a Search Would Be Unduly Burdensome. ......... 3

      II.     The Bureau Properly Applied Exemption 5 Withholdings to Protect Deliberative Process Materials. .................................................................................................. 7

              A.     The Bureau Properly Withheld Deliberative Process Material under Exemption 5. ................................................................................................ 9

              B.     The Disclosure of Any Withheld Deliberative Process Material Would Cause Foreseeable Harm .......................................................................... 11

              C.     The Bureau Reasonably Segregated All Non-Deliberative Facts and Non-Exempt Information Not Inextricably Intertwined with Agency Deliberations. ..................................................................................... 13

      III.    Exemption 7(A) Requires the Bureau to Continue to Withhold Investigatory Records But the Bureau Released All Reasonably Segregable Non-Exempt Portions of those Investigatory Records. ............................................................ 15

CONLUCSION .......................................................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adionser v. Dep't of Just.*,
  811 F. Supp. 2d 284 (D.D.C. 2011) ................................................................. 17

*Am. Fed'n of Gov't Emp. v. Dep't of,
  Com.*, 907 F.2d 203 (D.C. Cir. 1990) ................................................................. 4

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................. 2

*Armstrong v. Exec. Off. of the President*,
  97 F.3d 575 (D.C. Cir. 1996) ................................................................. 14

*Brayton v. Off. of U.S. Trade,
  Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ................................................................. 2

*Canning v. Dep't of Just.*,
  567 F. Supp. 2d 104 (D.D.C. 2008) ................................................................. 14

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................. 2

*Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*,
  478 F. Supp. 2d 80 (D.D.C. 2007) ................................................................. 2-3

*CREW v. Dep't of Just.*,
  746 F.3d 1082 (D.C. Cir. 2014) ................................................................. 15

*CREW v. Dep't of Just.*,
  658 F. Supp. 2d 217 (D.D.C. 2009) ................................................................. 16

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980) ................................................................. 10

*Comm. for Freedom of the Press v. FBI*,
  3 F.4th 350 (2021) ................................................................. 10, 11, 12

*Ctr. for Auto Safety v. EPA*,
  731 F.2d 16 (D.C. Cir. 1984) ................................................................. 14

*Curran v. Dep't of Just.*,
  813 F.2d 473 (1st Cir. 1987) ................................................................. 17

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001) ................................................................. 9, 12

*Doe v. Dep't of Just.*,
  790 F. Supp. 17 (D.D.C. 1992) ................................................................. 17

*EPA v. Mink*,
  410 U.S. 73 (1973) ................................................................. 12

*Forsham v. Harris*,
  445 U.S. 169 (1980) ................................................................. 6, 7

*Frontier Found. v. Dep't of Just.*,
  739 F.3d 1 (D.C. Cir. 2014) ................................................................. 10, 11

*Ground Saucer Watch, Inc. v. CIA*,
  692 F.2d 770 (D.C. Cir. 1981) ................................................................. 3
*Hall v. Dep't of Just.*,
  273 F. Supp. 3d 77 (D.D.C. 2017) ........................................................... 2
*In re Dep't of Just.*,
  999 F.2d 1302 (8th Cir. 1993) ......................................................... 16, 17
*Larson v. Dep't of State*,
  565 F.3d 857 (D.C. Cir. 2009) ................................................................ 3
*Long v. Immigr. & Customs,*
  *Enf't*, 149 F. Supp. 3d 39 (D.D.C. 2015) .............................................. 7
*Machado Amadis v. Dep't of State*,
  971 F.3d 364 (D.C. Cir. 2020) ........................................................... 9, 10
*Maydak v. Department of Justice*,
  218 F.3d 760 (D.C. Cir. 2000) .............................................................. 18
*Mead Data Cent., Inc. v. U.S. Air Force*,
  566 F.2d 242 (D.C. Cir. 1977) .............................................................. 13
*Media Rsch. Ctr. v. Dep't of Just.*,
  818 F. Supp. 2d 131 (D.D.C. 2011) ..................................................... 2, 3
*Military Audit Project v. Casey*,
  656 F.2d 724 (D.C. Cir. 1981) ................................................................ 3
*Muhammad v. U.S. Customs & Border Prot.*,
  559 F. Supp. 2d 5 (D.D.C. 2008) ........................................................... 3
*Nation Mag. v. U.S. Customs Serv.*,
  71 F.3d 885 (D.C. Cir. 1995) ............................................................. 3, 4
*Nat'l Sec. Counselors v. CIA*,
  960 F. Supp. 2d 101 (D.D.C. 2013) ....................................................... 4
*NLRB v. Robbins Tire & Rubber Co.*,
  437 U.S. 214 (1978) ........................................................................... 16, 17
*NLRB v. Sears, Roebuck & Co.*,
  421 U.S. 132 (1975) ............................................................................ 9, 12
*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) ................................................................ 3
*Petroleum Info. Corp. v. Dep't of Interior*,
  976 F.2d 1429 (D.C. Cir. 1992) ............................................................. 9
*Pratt v. Webster*,
  673 F.2d 408 (D.C. Cir. 1982) .............................................................. 17
*Pub. Citizen, Inc. v. Dep't of Educ.*,
  292 F. Supp. 2d 1 (2003) ....................................................................... 3
*Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.–Mex.*,
  ("PEER"), 740 F.3d 195 (D.C. Cir. 2014) ............................................ 16
*Renegotiation Bd. v. Grumman Aircraft*,
  421 U.S. 168 (1975) ................................................................................ 9
*SafeCard Servs. Inc. v. SEC*,
  926 F.2d 1197 (D.C. Cir. 1991) ............................................................. 3
*Sussman v. U.S. Marshal Serv.*,
  494 F.3d 1106 (D.C. Cir. 2007) ........................................................... 14

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
   141 S. Ct. 777 (2021) ................................................................................... 9, 10, 12
*Valencia-Lucena v. U.S. Coast Guard*,
   180 F.3d 321 (D.C. Cir. 1999) ............................................................................... 2
*Vaughn v. Rosen*,
   523 F.2d 1136 (D.C. Cir. 1975) ........................................................................... 10
*Weisberg v. Dep't of Just.*,
   627 F.2d 365 (D.C. Cir. 1980) ............................................................................... 2

## Statutes

5 U.S.C. § 552(a)(8)(A)(i) ........................................................................................ 11
5 U.S.C. § 552(b) ..................................................................................................... 13
5 U.S.C. § 552(b)(5) .................................................................................................. 9
5 U.S.C. § 552(b)(7)(A) ........................................................................................... 16

## Rules

Fed. R. Civ. P. 56(a) ................................................................................................. 2

Defendant the Department of Justice, and specifically its component, the Federal Bureau of Investigation (the "Bureau"), respectfully renews its motion for summary judgment as to the remaining claims in this Freedom of Information Act ("FOIA") case. Specifically, summary judgment should be entered in the  Bureau's favor on all remaining claims in this case because the undisputed record shows that the Bureau: (1) properly excluded a search for certain confidential informant files that would be unduly burdensome; (2) applied Exemption 5 withholdings properly to all deliberative process material; (3) properly maintains Exemption 7(A) blanket withholdings to certain pages contained in Plaintiff's investigative files that would interfere in pending law enforcement proceedings if disclosed; and (4) released all reasonably segregable non-exempt portions of records containing Exemption 5 and 7(A) withholdings, just described.

## BACKGROUND

The background of this case and of pro se Plaintiff Aakash Dalal's information requests to The Bureau is recounted in the Court's Memorandum Opinion and Order dated November 21, 2022 ("Memorandum Opinion"). *See* Mem. Op., ECF No. 64. To briefly summarize, this case arises from separate requests that Plaintiff submitted to the Bureau seeking records related to his investigation and eventual prosecution. *See id.* at 1; Am. Compl., ECF No. 6. After filing suit on May 31, 2016, *see* Compl. ECF No. 1, the Bureau eventually moved for summary judgment and Plaintiff cross-moved. *See* ECF No. 32; ECF No. 47; ECF No. 50; ECF No. 54; ECF 60 (Revised *Vaughn* Index). The Court granted in part and denied in part the Bureau's summary judgment motion and denied Plaintiff's cross-motion in part and without prejudice in part. *See generally* Mem. Op.

## LEGAL STANDARD

Summary judgement is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *See Anderson*, 477 U.S. at 248. A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Id*. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

The "vast majority" of FOIA cases are decided on motions for summary judgment. *See Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."); *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007). An agency may be entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record that it has located either has been produced to the Plaintiff or is exempt from disclosure. *See Weisberg v. Dep't of Just.*, 627 F.2d 365, 368 (D.C. Cir. 1980). To meet this burden, the agency may rely on reasonably detailed and non-conclusory declarations. *See Hall v. Dep't of Just.*, 273 F. Supp. 3d 77, 83 (D.D.C. 2017); *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (citations omitted).

"[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by

either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp.

2d at 80 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)) "[A]n

agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or

'plausible.'" *Media Rsch. Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d

857, 862 (D.C. Cir. 2009)). Courts give agency declarations "a presumption of good faith, which

cannot be rebutted by 'purely speculative claims about the existence and discoverability of other

documents.'" *SafeCard Servs. Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground

Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

Once the court determines that an agency has released all non-exempt material, it has no

further judicial function to perform under FOIA and the FOIA claim is moot. *Perry v. Block*,

684 F.2d 121, 125 (D.C. Cir. 1982); *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp. 2d

5, 7-8 (D.D.C. 2008).

## ARGUMENT

I.     **The Sole Remaining Portion of Plaintiff's Requests at Issue in this Case Seeks**
       **<u>Records, For Which Conducting a Search Would Be Unduly Burdensome</u>.**

The Court has already found that the Bureau's search for records responsive to Plaintiff's

request was nearly sufficient, with one exception. *See* Mem. Op. at 7. The Court found that the

Bureau failed to establish that a search for certain confidential informant files would be unduly

burdensome. *See id.* Indeed, "an agency need not honor a FOIA request that requires it to conduct

an unduly burdensome search." *Pub. Citizen, Inc. v. Dep't of Educ.*, 292 F. Supp. 2d 1, 6 (2003).

But an agency must "provide [a] sufficient explanation as to why such a search would be

unreasonably burdensome." *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995).

Here, the Bureau now submits the accompanying declaration from Shannon Hammer, which, along

with the whole record previously submitted, demonstrates that conducting a search for the

requested confidential informant files would be unreasonably burdensome. Because the Bureau need not engage in an unreasonable search, the Court should find that the Bureau's search was entirely reasonable and grant it summary judgment on this claim.

In this case, Plaintiff has requested all initial suitability report and recommendation documents of informants registered by Special Agent Coleman between January 1, 2007, and January 1, 2016. Second Declaration of David M. Hardy ("2d Hardy Decl."), ECF No. 32-1 ¶ 19. But courts have held that agencies need not disclose records if conducting a search for requested materials would impose an unreasonable burden. *See, e.g.*, *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 891-92 (D.C. Cir. 1995) (finding that a request "to search through 23 years of unindexed files for records pertaining to Perot . . . would impose an unreasonable burden on the agency."); *Am. Fed'n of Gov't Emp. v. Dep't of Com.*, 907 F.2d 203, 208-09 (D.C. Cir. 1990) (holding that a request that required a search of "every chronological office file and correspondent file, internal and external, for every branch office [and] staff office" was overbroad); *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 161-62 (D.D.C. 2013) (concluding that a request that sought copies of all federal intelligence agency records pertaining to a supercomputer and required a search of all agency offices was so broad as to impose an unreasonable burden upon the agency).

The Bureau has provided at least two prior declarations to support its position that a search for "all initial suitability Report and Recommendation documents of any and all informants registered by [Special Agent] Coleman between January 1, 2007 and January 1, 2016" would be unduly burdensome. *See* 2d Hardy Decl. ¶¶ 19, 56-57; Fourth Declaration of David M. Hardy ("4th Hardy Decl."), ECF No. 50-1, ¶¶ 20-21. As an initial matter, the Bureau has already acknowledged that "it is likely that [Special Agent] Coleman would have written initial suitability reports for his

confidential informants." 4th Hardy Decl. ¶ 21. Without a list of informants worked by Special Agent Coleman, however, the Bureau noted that it would be unduly burdensome to search for all of Special Agent Coleman's initial suitability report and recommendation documents, as doing so would require "manually searching through every single informant file *worked* by Mr. Coleman" *Id.* ¶¶ 20-21 (emphasis added); *see also* Hammer Decl. ¶ 6 (noting that the Bureau's Directorate of Intelligence is the main entity, within the Bureau, that can provide information pertaining to informants). One investigative file, alone, for example, like Plaintiff's investigative files in this case, could total into the hundreds of thousands of pages or more and would be unduly burdensome to review manually.  *See* 2d Hardy Decl. ¶ 4 (noting that the Bureau reviewed 1074 pages, but not confirming the total page count); *See* Apr. 7, 2023 Status Report, ECF No. 72 (advising that the Bureau has withheld approximately 827 pages pursuant to Exemption 7(A)).

The Court noted, however, that it could not conclude that such manual search would be unduly burdensome without knowing the number of "informant and/or investigative files of the subjects of the confidential informant's report" might exist. *See* Mem. Op. at 10-11. Ms. Hammer's declaration now explains that number of informants worked by Special Agent Coleman is sensitive law enforcement information protected by FOIA Exemption 7(E). *See* Hammer ¶ 9. Disclosing this information, for example, would expose the capabilities or limitations of the Special Agent and whatever squad or unit to which he was assigned. *See id.* In turn, "[c]riminals could use this information for awareness of whether there are a large number or miniscule number of informants in a particular geographic area reporting on specific types of criminal activity and alter their activities to thwart the program." *Id.*

Nonetheless, considering the Court's Memorandum Opinion, the Bureau consulted with the Bureau's Directorate of Intelligence—the Bureau's subject matter expert on informant files—

and the Bureau's Information Technology Applications and Data Division ("Data Division") to determine how it might be able to search for initial suitability reports and recommendation documents of any and all informants registered by Special Agent Coleman. *See* Hammer Decl. ¶¶ 6-7. These conferals confirmed that a search for all responsive records from January 1, 2007, to January 1, 2016, would be unduly burdensome. *See id.*

Specifically, the Bureau determined that "providing a comprehensive aggregate of [Special Agent] Coleman's sources and associated records, official or otherwise," would be unduly burdensome because it would require the Bureau to create a record, which FOIA does not require.[2] *Id.* ¶ 7; *Forsham v. Harris*, 445 U.S. 169, 186 (1980). The Bureau's current system that houses confidential human source data ("confidential source reporting system") only has records that date back to June 11, 2008. *See* Hammer Decl. ¶ 7. And, as Ms. Hammer explains, "[t]here are millions of records in the [confidential source] reporting system that would need to be searched." *Id.* Thus, identifying a comprehensive list of Special Agent Coleman's sources, would require "query and consolidation from different data sources as object, data, and logging storage has changed substantially throughout the years." *Id.* Although "[a]ny data in the current system for SA Coleman

---

[2]     Moreover, Ms. Hammer explains the risks of identifying a list of confidential informants:

> [T]he FBI relies on informants to report information to the FBI on a regular basis under strictly controlled and confidential circumstances pursuant to an express assurance that the FBI will keep their identities and the information they provide confidential. Disclosure of their identities or information they provide would forever eliminate that source as a future means of obtaining information and would have a chilling effect on the activities and cooperation of other sources which would severely hamper law enforcement efforts to detect and apprehend individuals engaged in the violation of federal criminal laws. Thus, even if a report containing the informant records was created, the information would be categorically withheld pursuant to FOIA Exemptions 6, 7(C), 7(D), and 7(E).

Hammer Decl. ¶ 10.

could be free text searched for key words to identify pertinent documents, [this search] would take several months and require multiple developers (at a significant cost, currently estimated at over $100,000) to complete if work were to begin immediately." *Id.* "Specific search terms and parameters must be created through a process of trial and error[, and t]he results of the search would need to be validated by Intelligence Analysts for accuracy, adding additional time and cost." *Id.*

And work to create this record of Special Agent Coleman's confidential informants would not be able to begin right away. "A search of this nature cannot be initiated without the appropriate documentation which is conducted through the [Bureau's] official records keeping system. The document would likely require reviews, edits, and approvals from multiple Divisions to include multiple [Bureau] Assistant Directors." *Id.* ¶ 8.

On these bases, the Court can now find that a search for any remaining responsive confidential informant records at issue in this case would be unduly burdensome and find that the Bureau's search was therefore reasonable. *C.f. Long v. Immigr. & Customs Enf't*, 149 F. Supp. 3d 39, 55 (D.D.C. 2015) (finding that producing and redacting the requested "snapshots" of data from an Enforcement Integrated Database would be unduly burdensome where the agency's current technology did not have the technology to produce the requested snapshots).

## II.   The Bureau Properly Applied Exemption 5 Withholdings to Protect Deliberative Process Materials.

The Bureau applied Exemption 5 to protect deliberative, intra-agency information located in portions of Plaintiff's closed investigative records and pending law enforcement investigation records, the latter of which the Bureau has categorically exempt pursuant to Exemption 7(A). *See* 2d Hardy Decl. ¶ 108; 4th Hardy Decl. ¶ 47. Specifically, the Bureau applied Exemption 5 withholdings to material contained on Bates pages: DALAL-131, 140, 223-233, 371-387, 688,

731-733, 965-966, and within records categorically exempt pursuant to Exemption 7(A). *See* 2d Hardy Decl. ¶ 109 n.27; *see also* Vaughn Index for Documents Withheld in Full, ECF No. 60-2 at 13 (comprising details of all other exemptions applied to records that the Bureau withheld in full pursuant to Exemption 7(A)). The District Court, however, found that the Bureau's support accompanying its initial motion for summary judgment did "not (at least yet) provide enough information to invoke the deliberative process privilege for these documents." Mem. Op. at 26. Thus, the Court denied the Bureau's initial motion for summary judgment as to the propriety of any deliberative process withholdings that "are not otherwise covered by the attorney-client privilege, the attorney work-product privilege, or some other exemption altogether." Mem. Op. at 29.

In the accompanying declaration from Ms. Hammer, the Bureau now provides additional details to support its application of Exemption 5 to protect deliberative process materials withheld in a two-page document located in Plaintiff's law enforcement records that were not also covered by any other exemptions. *See* Hammer Decl. ¶ 11. Specifically, these withholdings are contained in a draft version of one FD-302 form contained on Bates pages DALAL 965-966. *See id.* As Ms. Hammer's declaration explains, the Bureau applied Exemption 5 deliberative process privilege to several types of documents contained in Plaintiff's law enforcement records. *See id.* All other documents containing Exemption 5 deliberative process withholdings were also redacted under attorney-client privilege, attorney work product privilege, or some other exemption that the Court upheld. *See id.* Because the undisputed record now shows that the Bureau properly applied Exemption 5 to protect deliberative process materials contained in a draft version of one FD-302 form, the Court should grant the Bureau summary judgment on this remaining issue.

**A.      The Bureau Properly Withheld Deliberative Process Material under Exemption 5.**

Exemption 5 allows agencies to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). One well-recognized civil discovery privilege that permits agencies to withhold records under Exemption 5 is the deliberative process privilege. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 783 (2021). The deliberative process privilege shields from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The object of the privilege is to enhance the "quality of agency decisions" by "protecting open and frank discussion among those who make [decisions] within Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) (quoting Sears, 421 U.S. at 151).

To properly assert the deliberative process privilege under Exemption 5, the Agency must show that the contested intra or inter-agency records are both "'predecisional' and 'deliberative.'" *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020). "A document is predecisional if it was 'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975)). The agency's categorization of a document as predecisional is not dispositive: courts should undertake a functional analysis of "whether the agency treats the document as its final view on the matter." *Sierra Club*, 141 S. Ct. at 786, 788. Predecisional documents can lose that status if adopted as the agency's final position on the matter, but the privilege still protects information that was part of the agency's "group thinking in the process of

working out its policy." *Elec. Frontier Found. v. Dep't of Just.*, 739 F.3d 1, 8 (D.C. Cir. 2014); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Likewise deliberative records are those "prepared to help the agency formulate its position," *Sierra Club*, 141 S. Ct. at 786, by implicating the "consultative process" including communications which reflect the "type of back-and-forth exchange of ideas, constructive feedback, and internal debate over how best to promote and to preserve" the agency's mission. *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 364 (2021). In short, the "key to whether a document is deliberative is whether it is part of the 'give-and-take' of the 'consultative process.'" *Id.* (quoting *Machado*, 971 F.3d at 370); *see also Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975) (stating that documents part of the deliberative process make recommendations or express opinions on legal or policy matters).

Here the Bureau properly withheld predecisional and deliberative information contained in a draft FD-302 form. As a threshold matter, FD-302 forms are intra-agency communications eligible for protection under Exemption 5. "The designation 'FD-'" to start "is attached to forms [specifically] created and utilized internally by the [Bureau]." 2d Hardy Decl. ¶ 67(a), n.16.  As Ms. Hammer's declaration also explains, "FD-302 [forms] are written by [Bureau] Special Agents to document interviews as they investigate cases." Hammer Decl. ¶ 12. These forms are then "read and relied upon by other members of the investigative team (including other [Special Agents]), supervisors . . ., and [criminal] prosecutors[.]" *Id.*

In addition, the particular FD-302 form at issue here is also predecisional. As Ms. Hammer's declaration explains, the document "is clearly marked as draft and has handwritten comments/edits/notes on it[,]" and is clearly "still in the drafting process," where the "document is being edited." *Id.* ¶ 13. Moreover, while a final three-page version of this two-page draft FD-302

form was released to Plaintiff on Bates pages DALAL-442-444, the deliberative process privilege still applies to material contained in the draft FD-302 form that reflects the agent's thinking in refining the draft into a final product. *Elec. Frontier Found.*, 739 F.3d at 8.  And as Ms. Hammer further explained, the draft version at issue here, which "predate[s] the final agency decision[,]" may not always reflect that final version, as it is "through the editing process, which leads to [the] final refined product[]." *Id.* ¶ 13. Thus, it suffices to say that the material withheld in the particular FD-302 form at issue here is predecisional.

Moreover, the material withheld under the deliberative process privilege in the one remaining FD-302 is also clearly deliberative. As Ms. Hammer explains, "[a]gents must have the freedom to make edits to [FD-302] form[s]" before they are read and relied upon by other team members and by "supervisors when making investigatory or other related decisions and [by criminal prosecutors] when potentially bringing criminal charges." *Id.* ¶¶ 12-13. To that end, the contested draft FD-302 form clearly reflects, through its handwritten notes and comments in the draft, "the given and take of deliberations, through the editing process, which" as just mentioned, "leads to final, refined products." *Id.*

B.      **The Disclosure of Any Withheld Deliberative Process Material Would Cause Foreseeable Harm.**

In addition to showing that the material withheld in the one remaining FD-302 form here qualifies for protection under Exemption 5 and falls under the deliberative process privilege, Ms. Hammer's declaration further explains that any disclosure of such information would cause foreseeable harm. Under the FOIA Improvement Act of 2016, an agency must show that it (i) "reasonably foresees that disclosure would harm an interest protected by an exemption" to FOIA or (ii) "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i). "The foreseeable harm requirement imposes an independent and meaningful burden on agencies." *Reps. Comm.*, 3 F.4th

at 369. To carry this burden, an agency withholding documents under the deliberative process privilege must provide "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* at 370. Agencies must explain the "particular sensitivity of the types of information at issue or the role that they play in the relevant agency decisional processes[,]" and must "articulate the link between the specified harm and specific information contained in the material withheld." *Id.* at 369, 372 (referencing H.R. Rep. No. 391, at 9 (2016)).

Here, disclosure of the withheld material would cause foreseeable harm to the quality of the Bureau's decisions by implicating two interests protected by the deliberative process privilege: candor and confusion of the agency's position on controversial issues. *See Klamath*, 532 U.S. at 8-9 (nothing that the object of the privilege is to enhance the "quality of agency decisions" by "protecting open and frank discussion among those who make [decisions] within Government." (quoting *Sears*, 421 U.S. at 151)); *Klamath*, 532 U.S. at 9 (nothing that this privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news."); *Sierra Club*, 141 S.Ct. at 785 (noting the privilege encourages candor among agency officials and "blunts the chilling effect that accompanies the prospect of disclosure."); *EPA v. Mink*, 410 U.S. 73, 87 (1973) (explaining that Government decision making would be greatly hampered if agencies were "prematurely forced to 'operate in a fishbowl.'") (referencing S. Rep. No. 813, at 9 (1965)).

As Ms. Hammer explains, the harm in releasing the material protected in the draft FD-302 form would cause a "chilling effect on agency employees' willingness to share such drafts if they knew their unrefined ideas would be subject to public disclosure." Hammer Decl. ¶ 13. This in

turn would harm the agency's decision-making process, because as Mr. Hardy previously explained, "[i]n order to make the best decisions/policies, a whole host of ideas must be explored. Some raw ideas, in retrospect, may seem ill-conceived or even foolish, but the consideration of such ideas is absolutely necessary to refine and implement the best decisions/policies." 4th Hardy Decl. ¶ 48. But fear that agent's "unrefined ideas would be subject to public disclosure," as Ms. Hammer explains, could then result in "the drafting process of FD-302[ forms, taking] significantly longer" to complete, hindering the Bureau's decision-making efforts and delaying other decisions that rely on FD-302 forms—including decisions to take further investigatory action. Hammer Decl. ¶¶ 11, 13. Such chilling effects could also "divert resources from critical mission needs if SAs knew that every saved draft they wrote could potentially become public and be subjected to scrutiny." *Id.* ¶ 13. Finally, Ms. Hammer explains "that there is a risk that disclosure of these drafts would hinder the [Bureau's] investigative efforts and would create public confusion since these drafts do not constitute final agency decisions." *Id.* ¶ 13.

Thus, the record shows that the release of any deliberative material that the Bureau withheld on the remaining draft FD-302 form would cause foreseeable harm that warrants Exemption 5's application to protect such information from disclosure.

**C.    The Bureau Reasonably Segregated All Non-Deliberative Facts and Non-Exempt Information Not Inextricably Intertwined with Agency Deliberations.**

As a final matter, FOIA requires that if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b). Therefore, any non-exempt portions must be disclosed unless they are "intrinsically intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Thus, an agency must show "with reasonable specificity" that the information it has withheld cannot be further segregated.

*Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996) (quotation omitted); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). The agency also bears the burden of demonstrating that withheld documents contain no reasonably segregable factual information. *See Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which may be overcome by some "quantum of evidence" by the FOIA requester. *Sussman v. U.S. Marshal Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

Here, the Bureau establishes that when it assessed the application of Exemption 5 to the particular FD-302 form at issue, it reasonably segregated all non-deliberative facts and non-exempt information not intertwined with the agency deliberations contained therein. Specifically, Ms. Hammer states that "[t]he [Bureau] endeavored to segregate non-deliberative facts, whenever possible, and only withheld such material when it found it was inextricably intertwined with agency deliberations." Hammer Decl. ¶ 14; *see also id.* ¶ 18 (nothing that "there is no further non-exempt information that can be reasonably segregated and released without revealing FOIA exempt information."). Thus, the Bureau has met its obligations to disclose all reasonably segregable information contained in the sole remaining document at issue.

\*       \*       \*

In sum, the Court should find that the undisputed record shows that the Bureau properly applied Exemption 5 to protect deliberative process material withheld in the particular draft FD-302 form, and that such withholdings were not otherwise covered by any other FOIA exemption that this Court has already upheld. Therefore, summary judgment in favor of the Bureau's application of Exemption 5 is warranted.

**III.    Exemption 7(A) Requires the Bureau to Continue to Withhold Investigatory Records But the Bureau Released All Reasonably Segregable Non-Exempt Portions of those Investigatory Records.**

The Bureau invokes Exemption 7(A) to categorically withhold 827 pages responsive to Plaintiff's FOIA Requests because disclosures of this information could reasonably be expected to interfere with enforcement proceedings—specifically Plaintiff's post-conviction proceedings, re-opening his criminal case. *See* Hammer Decl. ¶ 15. In its prior summary judgment briefing, the Bureau similarly invoked Exemption 7(A) to categorically withhold these same records because, at that time, Plaintiff's investigation remained open until the criminal appeal process completed.[3] *See* 4th Hardy Decl. ¶ 23. But the Court's Memorandum Opinion denied the Bureau's summary judgment on the application of Exemption 7(A) because Plaintiff's appeal had subsequently concluded and found that "it was no longer clear that the records at issue could be expected to interfere with any enforcement proceedings that are 'pending or reasonably anticipated.'" Mem. Op. at 41 (citing *CREW v. Dep't of Just.*, 746 F.3d 1082, 1096 (D.C. Cir. 2014)).

After the Court's ruling, the Bureau initially informed the Court in its April 7, 2023, Status Report that it would re-process the 827 pages it had previously withheld under Exemption 7(A). *See* ECF No. 72. After filing this Status Report, however, the Bureau learned that Plaintiff filed a motion for post-conviction relief. *See* ECF No. 79; Hammer Decl. ¶ 15. In light of Plaintiff's post-conviction litigation, the Bureau believes that disclosing the 827 pages will now interfere with the law enforcement proceedings and, therefore, maintains its position that these records are protected from disclosure under Exemption 7(A). *See id.* ¶ 15. Notably, the Bureau offered to wait to brief

---

[3]    In its prior summary judgment briefing, the Bureau did not identify the total number of pages it was withholding pursuant to Exemption 7(A) to avoid "reveal[ing] critical information about the size and scope of a pending FBI investigation." 2d Hardy Decl. ¶ 4 n.2, 12. As Mr. Hardy explained, "[r]eleasing this information would cause the exact type of investigative harm Exemption 7(A) guards against." *Id.*

this issue after Plaintiff's post-conviction relief proceedings concluded, but Plaintiff declined this request. *See* Aug. 7, 2024, Min. Order; Status Report, ECF No. 81.

As this Court previously discussed, "Exemption 7(A) protects from disclosure 'records or information compiled for law enforcement purposes' if disclosure 'could reasonably be expected to interfere with enforcement proceedings.'" Mem. Op. at 40 (citing 5 U.S.C. § 552(b)(7)(A)). Thus, as a threshold matter, an agency must show that the records were compiled for a law enforcement purpose. *See id.* (citing *Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.–Mex. ("PEER")*, 740 F.3d 195, 202-03 (D.C. Cir. 2014)). After clearing the threshold showing, an agency asserting Exemption 7(A), must also show that the disclosure of such records "could reasonably interfere with enforcement proceedings." 5 U.S.C. §22(b)(7)(A). When determining whether disclosure "could reasonably be expected to interfere with" enforcement proceedings, Congress has intended that this criterium be applied broadly. *See CREW v. Dep't of Just.*, 658 F. Supp. 2d 217, 225 (D.D.C. 2009) (noting that "Congress 'relaxed' the language of Exemption 7(A) in 1986," thus broadening its scope).

In addition, as the Bureau's previous filings discussed, when "deciding an Exemption 7(A) case, '[i]t is the particular categories of documents, and the likelihood that the release of documents within those categories could reasonably be expected to threaten enforcement proceedings, on which the court must focus.'" Def.'s Mem. for Summ. J., ECF No. 32, at 19 (citing *In re Dep't of Just.*, 999 F.2d 1302, 1309 (8th Cir. 1993)). "Thus, the government may assert Exemption 7(A) categorically and make generic showings that disclosure could interfere with law enforcement." *Id.* (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 234-35 (1978)). "The "categories must be distinct enough to allow meaningful judicial review, yet not so distinct as prematurely [to]

let the cat out of the investigative bag." *Id.* (citing *Dep't of Just.*, 999 F.2d at 1311 (quoting *Curran v. Dep't of Just.*, 813 F.2d 473, 475 (1st Cir. 1987))).

Here, as a threshold matter, this Court has already found that the Bureau has met the showing the affected records were compiled for a law enforcement purpose.[4] *See* Mem. Op. at 39. In addition, as Ms. Hammer explains, the release of responsive records withheld pursuant to Exemption 7(A) "would [again] interfere with the enforcement proceedings[,]" "currently taking place because of Plaintiff's petition for post-conviction relief." Hammer Decl. ¶ 16. First, "[f]or purposes of Exemption 7(A), a pending appeal of a criminal conviction qualifies as an ongoing law enforcement proceeding." *Adionser v. Dep't of Just.*, 811 F. Supp. 2d 284, 298 (D.D.C. 2011). Second, as Ms. Hammer's declaration explains, the disclosure of the records the Bureau withheld under Exemption 7(A) would interfere with these post-conviction proceedings. *See* Hammer Decl. ¶ 16. The substance of Plaintiff's post-conviction proceedings claims that criminal prosecutors failed to turn over certain Bureau documents in criminal discovery. *See id.* Plaintiff has also claimed that the relevant discovery materials include records that were either provided by the Bureau to the prosecutor's office or vice versa during the Bureau's investigation into Plaintiff for the actions that led to his current criminal conviction. *See* Notice of Mot. to Mod. Privacy Act Order ("Mot. to Modify"), *Dalal v. Molinelli*, Civ. A. No. 20-1434 (D.N.J. June 21, 2023), ECF No. 199, at 5. Simultaneously, Plaintiff has sought to modify the terms of a protective order "governing the disclosure of files that Plaintiff wants to support his post-conviction relief

---

[4]     As the Court further explained, the Bureau, as a law enforcement agency, "is entitled to deference" when it asserts that the records to which Exemption 7(A) applies were compiled for a law enforcement purposes. *See id.* (citing *Doe v. Dep't of Just.*, 790 F. Supp. 17, 20 (D.D.C. 1992) (citing *Pratt v. Webster*, 673 F.2d 408, 414, 418-19 (D.C. Cir. 1982))). Moreover, the Court noted that it is uncontested that the records at issue in this case were compiled "'during the FBI's criminal investigation into Plaintiff's crimes involving religious discrimination, use of force and/or violence, acts of terrorism, and domestic terrorism.'" Mem. Op. at 39 (citing Hardy Decl. ¶ 64).

arguments." Hammer Decl. ¶ 16; *see also generally* Mot. to Modify, *Dalal*, Civ. A. No. 20-1434. Thus, it is the Bureau's belief that disclosure of records compiled for the Bureau's criminal investigation into Plaintiff's crimes, if disclosed, would directly interfere with Plaintiff's pending post-conviction proceedings. *See* Hammer Decl. ¶ 16.

Moreover, as the Bureau's initial filings explained, "the types of documents that were categorically denied pursuant to FOIA Exemption 7(A) are listed in the [Second] Hardy Declaration." Def.'s Mem. for Summ. J., at 20 (citing 2d Hardy Decl. ¶¶ 67(a)-(u)). "Each type of document is identified with specificity." *Id.*

In addition, because of the D.C. Circuit's ruling in *Maydak v. Department of Justice*, 218 F.3d 760 (D.C. Cir. 2000), the Bureau has also asserted FOIA Exemptions 3, 5, 6, 7(C), 7(D), and 7(E) as additional grounds for withholding information from the records categorically denied pursuant to Exemption 7(A). *See* Hammer Decl. ¶ 17. "[T]he analysis of the underlying exemptions as outlined in the Second Hardy Declaration, ¶¶ 83-153, remains accurate," Hammer Decl. ¶ 17, and the Bureau respectfully refers the Court to its prior summary judgment briefing and supporting materials referenced therein for the additional grounds for withholding such information. *See* Def.'s Mot. for Summ. J. at 20-38. Should the Court, however, find again that the grounds supporting the categorical reliance on Exemption 7(A) no longer exist, and additional information is needed to justify these additional withholdings to support material that is categorically withheld under Exemption 7(A), the FBI respectfully requests that it be allowed to provide that information to the Court upon supplemental briefing or a further motion for summary judgment.

As a final matter, as with its Exemption 5 withholdings, the Bureau segregated releaseable information from that protected by Exemption 7(A) to the extent possible. Def.'s Mem. for Summ J. at 20 (citing 2d Hardy Decl. ¶¶ 36, 39, 40, 42, and 68). Indeed, "[e]very effort was made by the

Bureau to segregate and release nonexempt responsive records in connection with all 827 records categorically withheld pursuant to Exemption 7(A). *See* Hammer Decl. ¶ 18.

Thus, the undisputed record shows that the Bureau has properly maintained Exemption 7(A) withholdings but to the extent possible, has reasonably segregate all non-exempt portions of the investigatory records withheld pursuant to that exemption, and all other exemptions applied in this case. Summary judgment, therefore, should be granted in favor of the Bureau as to the remaining issue of its application of Exemption 7(A) and this case should be dismissed in its entirety.

## CONLUCSION

For the foregoing reasons and supported by the attached documents, the Bureau respectfully requests that this renewed motion for summary judgment be granted and judgment entered in the agency's favor.

Dated: February 23, 2024
    Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By: _____ /s/ *Anna D. Walker* _____
    Anna D. Walker
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    (202) 252-2544

*Attorneys for the United States of America*