UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AAKASH DALAL,

    Plaintiff,

    v.

UNITED STATES DEPARTMENT
OF JUSTICE et al.,

    Defendants.

Case No.: 1:16-cv-01040 (TJK)

**FIRST DECLARATION OF SHANNON R. HAMMER IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

I, Shannon R. Hammer, declare as follows:

1.    I am the Assistant Section Chief (ASC) of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia, and in the absence of RIDS Section Chief Michael G. Seidel, I serve as Acting Section Chief for RIDS. I have held this position since January 2024. I joined the FBI in October 2006, and prior to my current position, I was the Unit Chief of the National Security and Classification Operations Unit; Unit Chief of a FOIPA Operations Unit; and a supervisor in the Initial Processing Operations Unit. In those capacities, I had management oversight for the RIDS national security review program; enterprise declassification review compliance pursuant to Executive Order 13526, and classification reviews for civil and criminal discovery matters; and I oversaw the frontend operations of the FBI's FOIPA program.

2. In my official capacity as Assistant Section Chief of RIDS, I supervise approximately 241 FBI employees, supported by approximately 108 contractors, who staff a total of nine (9) Federal Bureau of Investigation Headquarters (FBIHQ) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3. Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of Plaintiff's FOIPA request that is the subject of this litigation.

4. This declaration is submitted in response to the Court's Order dated November 21, 2022 (ECF No. 64) and in support of Defendant's Renewed Motion for Summary Judgment. Part I provides the Court with additional justification by providing further details supporting the FBI's claim that a search for the informant files would be unduly burdensome. Part II provides the FBI's justification for withholding information under the deliberative process privilege, FOIA Exemption 5, 5 U.S.C. §§ 552 (b)(5). Part III will address whether any enforcement proceeding remains pending.

## ADMINISTRATIVE HISTORY

5. The administrative history related to the initial handling of Plaintiff's FOIA requests has been previously discussed in the FBI's first declaration in this case. (ECF No. 32-1, Second Declaration of David M. Hardy, ¶¶ 7-45.). Pursuant to the Court's Memorandum Opinion and Order (ECF No. 64), the FBI advised Plaintiff by letter dated July 31, 2023, that records previously withheld under Exemption 7A still warrant being withheld under 7A and underlying exemptions. (Ex. A.)

## PART I: THE FBI'S SEARCH FOR INFORMANT RECORDS

6. As described in the Second Hardy Declaration ¶¶ 56-57, and the Fourth Hardy Declaration, ¶¶ 20-21, a search for the requested informant files would be unduly burdensome. On March 10, 2023, the FBI's Directorate of Intelligence (DI) was consulted to see if a search for the requested informant files could be conducted. The DI is the FBI's subject matter expert on informant files and would be the main entity to provide the requested information. The FBI's IT Applications and Data Division (ITADD) was also consulted. If a search were to be attempted, ITADD would assist in completing it. As a result of this search inquiry, the FBI determined a search of the requested informant files would be unduly burdensome.

7. As noted above, RIDS reached out to the DI seeking a record of all initial suitability reports and recommendation documents of any and all informants registered by Special Agent (SA) Corey S. Coleman between January 1, 2007, and January 1, 2016. A search of this information would be unduly burdensome based on the complexity of the system that houses confidential human source (CHS) data, which has changed between 2007 and 2016. The current confidential human source reporting system only has records back to June 11, 2008, at the earliest. There are millions of records in the CHS reporting system that would need to be searched.

Providing a comprehensive aggregate of SA Coleman's sources and associated records, official or otherwise, requires query and consolidation from different data sources as object, data, and logging storage has changed substantially throughout the years. Any data in the current system for SA Coleman could be free text searched for key words to identify pertinent documents, which would take several months and require multiple developers (at a significant cost, currently estimated at over $100,000) to complete if work were to begin immediately. Specific search terms and parameters must be created through a process of trial and error. The results of the search would need to be validated by Intelligence Analysts for accuracy, adding additional time and cost.

8. A search of this nature cannot be initiated without the appropriate documentation which is conducted through the FBI's official records keeping system. The document would likely require reviews, edits, and approvals from multiple Divisions to include multiple FBI Assistant Directors. While the approval process is not unduly burdensome, additional time would be needed for the review and approval process.

9. Additionally, the Court required further information about specifically how many "informant and/or investigative files of the subjects of the confidential informant's report" might exist before determining if a search would be unduly burdensome. *See* Mem. Op. at 10-11. However, disclosing this information would reveal non-public investigative techniques and procedures of the FBI's informant program that are essential for the FBI to pursue its law enforcement and intelligence gathering missions. Indicating the number of informants opened by an SA would provide insight into the size and scope of the FBI's informant program within a particular location and/or specific type of criminal activity, given that SAs are assigned to specific

units or squads.[1] Thus, disclosing the number of informants worked by an SA would expose the capabilities or limitations of the SA and whatever squad or unit they were assigned to. Criminals could use this information for awareness of whether there are a large number or miniscule number of informants in a particular geographic area reporting on specific types of criminal activity and alter their activities to thwart the program. Thus, the number of informants worked by a specific SA or number of investigative files they worked on would be sensitive law enforcement information protected by FOIA Exemption 7(E).

10.    Moreover, the FBI relies on informants to report information to the FBI on a regular basis under strictly controlled and confidential circumstances pursuant to an express assurance that the FBI will keep their identities and the information they provide confidential. Disclosure of their identities or information they provide would forever eliminate that source as a future means of obtaining information and would have a chilling effect on the activities and cooperation of other sources which would severely hamper law enforcement efforts to detect and apprehend individuals engaged in the violation of federal criminal laws. Thus, even if a report containing the informant records was created, the information would be categorically withheld pursuant to FOIA Exemptions 6, 7(C), 7(D), and 7(E).

**PART II:  THE FBI'S JUSTIFICATION FOR WITHHOLDING PRIVILEGED INFORMATION**

11.    The FBI invoked the deliberative process privilege to withhold portions of Plaintiff's law enforcement records as described in the Second Hardy Declaration, ¶¶ 105-109, and Fourth Hardy Declaration, ¶ 47. The Court ruled the FBI had not met its burden of showing the

---

[1] Within the FBI, SAs typically work within specific units or squads where they are assigned particular investigations. Generally, units or squads specialize in specific types of crimes and are assigned to a particular geographic area.

material is properly withheld under the deliberative process privilege and ordered the FBI to provide a more detailed declaration in its renewed motion for summary judgment. (ECF No. 64, page 29). The FBI originally asserted the Exemption 5 deliberative process privilege for several documents, including FD-302s, transcripts of the Plaintiff's recorded conversations, representation letters between Special Agents and attorneys within the DOJ's OGC, litigation hold and preservation letters, and court documents related to the Plaintiff's case. Upon further review, the FBI determined the privilege only applies to the draft version of one FD-302 contained on Bates pages DALAL-965 and DALAL-966. It should be noted that the final version of the FD-302 was released to Plaintiff on Bates pages DALAL-442 through DALAL-444. The other records were redacted, and previously upheld, under attorney-client privilege, attorney work product privilege, or other applicable exemptions.

12.     The information withheld under this privilege in the one remaining FD-302 at issue is intra-agency and pre-decisional. FD-302s are written by FBI Special Agents to document interviews as they investigate cases. These are read and relied upon by other members of the investigative team (including other SAs), supervisors when making investigatory or other case related decisions, and prosecutors when considering criminal charges.

13.     The FD-302 at issue here is clearly marked as a draft and has handwritten comments/edits/notes on it. Therefore, this record is not finalized, is still in the drafting process, can change as the document is being edited, and does not reflect the final version. Agents must have the freedom to make edits to this investigative form without the fear of release to the public. The drafts predate the final agency decision and reflect the give and take of deliberations, through the editing process, which leads to final, refined products. The harm in release would be a chilling effect on FBI SA's willingness to share such a draft if they knew their unrefined ideas would be

subject to public disclosure. More specifically, the drafting process of FD-302s could take significantly longer and divert resources from critical mission needs if SAs knew that every saved draft they wrote would become public and subjected to scrutiny. Furthermore, disclosure of these drafts would promote public confusion since these drafts do not constitute final agency documents or agency decisions.

14.   The FBI properly applied the deliberative process privilege under Exemption 5 to withhold pre-decisional and deliberative material, and there was no segregable information.

## PART III:  PENDING ENFORCEMENT PROCEEDING

15.   As described in the Second Hardy Declaration, ¶¶ 62-82 and Fourth Hardy Declaration, ¶¶ 26-28, the FBI located responsive records in a pending investigative file that is exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A), which states an agency may categorically deny access to records if the records were compiled for law enforcement purposes and the production of such records could reasonably be expected to interfere with law enforcement proceedings. In its November 21, 2022, the Court denied without prejudice the FBI's use of Exemption 7(A) because it appeared that Plaintiff's appeal in his criminal case had concluded. *See* Mem. Op. and Order, ECF No. 64. The Court provided the FBI an opportunity "to file a supplementary declaration addressing whether any investigation or other enforcement proceeding remains pending – or whether these records are properly withheld (in full or in part) under some other FOIA exemption." *Id.* In light of this Order, the FBI informed the Court that it determined no pending enforcement proceeding existed any longer and that it would re-process all Exemption 7(A) material. *See* ECF No. 72. In the Second Hardy Declaration, Footnote 2, the FBI acknowledged that the page count of 1,074 pages did not represent the total number of pages reviewed by the FBI as revealing the exact page count could cause harm to the pending

enforcement proceeding withheld in full under 7(A). Once the pending enforcement proceeding concluded, the FBI informed the Court in its April 7, 2023, Status Report that it had a total of 827 pages and various media to re-process that was previously withheld under Exemption 7(A). *See* ECF No. 72. Subsequent to that Status Report, but before any re-processing had been completed, the FBI learned that Plaintiff filed a motion for post-conviction relief, re-opening his criminal case. The FBI informed the Court of this in its August 4, 2023, Status Report and proposed that this case be stayed until the completion of the appeal or to proceed to summary judgment briefing without re-processing and re-asserting Exemption 7(A) on the records previously withheld under Exemption 7(A). *See* ECF No. 79. The Court, in its August 7, 2023 Minute Order, ordered Plaintiff to advise the Court if he sought to stay this matter or wished to proceed to briefing. Plaintiff subsequently rejected a stay. *See* ECF No. 81. The Court then ordered a briefing schedule.

16.     Pursuant to November 21, 2022, Memorandum Opinion and Order, the FBI submits this declaration to inform the Court that a pending enforcement proceeding again exists. On July 12, 2023, the FBI verified Plaintiff has a New Jersey state court proceeding seeking relief from his criminal conviction. (*State v. Dalal*, Docket No. 13-03-374-I (Super. Ct. Law Div.) (Bergen County Ct.). The FBI advised in its Status Report on August 4, 2023, that release of any investigatory files would interfere with the law enforcement proceedings currently taking place because of Plaintiff's petition for post-conviction relief. As of the filing of this declaration, Plaintiff's post-conviction relief proceedings are active and ongoing, with a hearing currently scheduled in April 2024. As such, all records previously withheld under Exemption 7(A) should remain withheld under Exemption 7(A) because pre-mature release of these records could reasonably be expected to interfere with Plaintiff's post-conviction relief proceedings. (ECF No. 79).

17.     Additionally, in light of the D.C. Circuit's ruling in *Maydak v. U.S. Department of Justice*, 218 F.3d 760 (D.C. Cir. 2000), the FBI is also asserting FOIA exemptions (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E) as additional grounds for withholding information from the records categorically denied pursuant to Exemption 7(A). The analysis of the underlying exemptions as outlined in the Second Hardy Declaration, ¶¶ 83-153, remains accurate.

## CONCLUSION

18.     It would be unduly burdensome for the FBI to conduct a search for the informant records subject to the FOIA. In addition, information was properly withheld pursuant to FOIA Exemptions 5 and 7(A). Lastly, there is no further non-exempt information that can be reasonably segregated and released without revealing FOIA exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibit A attached hereto is a true and correct copy.

Executed this 23rd day of February, 2024.

_____
SHANNON R. HAMMER
Assistant Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AAKASH DALAL,<br><br> Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT<br>OF JUSTICE et al.,<br><br> Defendants. | Case No. 1:16-cv-01040 (TJK) |

# Exhibit A



U.S. Department of Justice

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

July 31, 2023

AAKASH DALAL
SBI# 792652E
215 BURLINGTON ROAD SOUTH
BRIDGETON, NJ  08302

Civil Litigation No.:  16-cv-01040
Subject: DALAL, AAKASH

Dear Mr. Dalal:

The purpose of this letter is to advise you of the status of your pending Freedom of Information Act (FOIA) litigation.  As we previously indicated, material you requested is located in investigative files which are exempt from disclosure pursuant to Title 5 United States Code section 552(b)(7)(A).  5 U.S.C. § 552(b)(7)(A) exempts from disclosure:

"records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information [ ] could reasonably be expected to interfere with enforcement proceedings."

As instructed by Court Order dated November 21, 2022, the FBI reviewed those pages that were categorically exempt from disclosure and confirmed that the records are still exempt pursuant to FOIA Exemption (b)(7)(A), and underlying FOIA Exemptions (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  *See Maydak v. U.S. Department of Justice*, 218 F.3d 760 (D.C. Cir. 2000).

Please refer to the enclosed FBI FOIPA Addendum for additional information applicable to your request. **"Part 1"** of the Addendum includes standard responses that apply to all requests.  **"Part 2"** includes additional standard responses that apply to all requests for records about yourself or any third party individuals.  **"Part 3"** includes general information about FBI records that you may find useful.  Also enclosed is our Explanation of Exemptions.

Although your request is in litigation, we are required by law to provide you the following information:

If you are not satisfied with the Federal Bureau of Investigation's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.  Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."  Please cite the FOIPA Request Number assigned to your request so it may be easily identified.

You may seek dispute resolution services by contacting the Office of Government Information Services (OGIS).  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.  Alternatively, you may contact the FBI's FOIA Public Liaison by emailing foipaquestions@fbi.gov.  If you submit your dispute resolution correspondence by email, the subject heading should clearly state "Dispute Resolution Services."  Please also cite the FOIPA Request Number assigned to your request so it may be easily identified.

Please direct any further inquiries about this case to the Attorney representing the Government in this matter.  Please use the FOIPA Request Number and/or Civil Action Number in all correspondence or inquiries concerning your request.

Sincerely,

Michael G. Seidel
Section Chief
Record/Information
 Dissemination Section
Information Management Division

Enclosures

**FBI FOIPA Addendum**

As referenced in our letter responding to your Freedom of Information/Privacy Acts (FOIPA) request, the FBI FOIPA Addendum provides information applicable to your request.  Part 1 of the Addendum includes standard responses that apply to all requests.  Part 2 includes standard responses that apply to requests for records about individuals to the extent your request seeks the listed information.  Part 3 includes general information about FBI records, searches, and programs.

**Part 1: The standard responses below apply to all requests:**

(i)  **5 U.S.C. § 552(c).**  Congress excluded three categories of law enforcement and national security records from the requirements of the FOIPA [5 U.S.C. § 552(c)].  FBI responses are limited to those records subject to the requirements of the FOIPA.  Additional information about the FBI and the FOIPA can be found on the www.fbi.gov/foia website.

(ii)  **Intelligence Records**.  To the extent your request seeks records of intelligence sources, methods, or activities, the FBI can neither confirm nor deny the existence of records pursuant to FOIA exemptions (b)(1), (b)(3), and as applicable to requests for records about individuals, PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(1), (b)(3), and (j)(2)].  The mere acknowledgment of the existence or nonexistence of such records is itself a classified fact protected by FOIA exemption (b)(1) and/or would reveal intelligence sources, methods, or activities protected by exemption (b)(3) [50 USC § 3024(i)(1)].  This is a standard response and should not be read to indicate that any such records do or do not exist.

**Part 2: The standard responses below apply to all requests for records on individuals:**

(i)  **Requests for Records about any Individual—Watch Lists.**  The FBI can neither confirm nor deny the existence of any individual's name on a watch list pursuant to FOIA exemption (b)(7)(E) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (j)(2)].  This is a standard response and should not be read to indicate that watch list records do or do not exist.

(ii)  **Requests for Records about any Individual—Witness Security Program Records.**  The FBI can neither confirm nor deny the existence of records which could identify any participant in the Witness Security Program pursuant to FOIA exemption (b)(3) and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(3), 18 U.S.C. 3521, and (j)(2)].  This is a standard response and should not be read to indicate that such records do or do not exist.

(iii)  **Requests for Records for Incarcerated Individuals.**  The FBI can neither confirm nor deny the existence of records which could reasonably be expected to endanger the life or physical safety of any incarcerated individual pursuant to FOIA exemptions (b)(7)(E), (b)(7)(F), and PA exemption (j)(2) [5 U.S.C. §§ 552/552a (b)(7)(E), (b)(7)(F), and (j)(2)].  This is a standard response and should not be read to indicate that such records do or do not exist.

**Part 3: General Information:**

(i)  **Record Searches.**  The Record/Information Dissemination Section (RIDS) searches for reasonably described records by searching systems or locations where responsive records would reasonably be found.  A standard search normally consists of a search for main files in the Central Records System (CRS), an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled by the FBI per its law enforcement, intelligence, and administrative functions.  The CRS spans the entire FBI organization, comprising records of FBI Headquarters, FBI Field Offices, and FBI Legal Attaché Offices (Legats) worldwide; Electronic Surveillance (ELSUR) records are included in the CRS.  Unless specifically requested, a standard search does not include references, administrative records of previous FOIPA requests, or civil litigation files.  For additional information about our record searches, visit www.fbi.gov/services/information-management/foipa/requesting-fbi-records.

(ii)  **FBI Records.**  Founded in 1908, the FBI carries out a dual law enforcement and national security mission.  As part of this dual mission, the FBI creates and maintains records on various subjects; however, the FBI does not maintain records on every person, subject, or entity.

(iii)  **Requests for Criminal History Records or Rap Sheets.**  The Criminal Justice Information Services (CJIS) Division provides Identity History Summary Checks – often referred to as a criminal history record or rap sheet.  These criminal history records are not the same as material in an investigative "FBI file."  An Identity History Summary Check is a listing of information taken from fingerprint cards and documents submitted to the FBI in connection with arrests, federal employment, naturalization, or military service.  For a fee, individuals can request a copy of their Identity History Summary Check.  Forms and directions can be accessed at www.fbi.gov/about-us/cjis/identity-history-summary-checks.  Additionally, requests can be submitted electronically at www.edo.cjis.gov.  For additional information, please contact CJIS directly at (304) 625-5590.

(iv)  **National Name Check Program (NNCP).**  The mission of NNCP is to analyze and report information in response to name check requests received from federal agencies, for the purpose of protecting the United States from foreign and domestic threats to national security.  Please be advised that this is a service provided to other federal agencies.  Private Citizens cannot request a name check.

**EXPLANATION OF EXEMPTIONS**

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.