Aakash Dalal
SBI# 792652E
215 Burlington Road South
Bridgeton, NJ 08302
Plaintiff, *pro se*



## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| AAKASH DALAL,<br><br>Plaintiff,<br><br>Vs.<br><br>UNITED STATES DEPARTMENT OF JUSTICE and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | Civil Action No.: 16-cv-1040 (TJK) |

### MEMORANDUM OF POINTS AND AUTHORITES IN SUPPORT OF PLAINTIFF AAKASH DALAL'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT UNITED STATES DEPARTMENT OF JUSTICE'S AND THE FEDERAL BUREAU OF INVESTIGATION'S MOTION FOR SUMMARY JUDGMENT

This Memorandum of Points and Authorities will serve as Plaintiff Aakash Dalal's ("Mr. Dalal") Cross-Motion for Summary Judgment and Opposition to Defendants United States Department of Justice, Federal Bureau of Investigation's ("FBI") Motion for Summary Judgment. *ECF #89*. Mr. Dalal's Statement of Undisputed Material Facts and Response to the Defendants' Supplemental Statement of Undisputed Material Facts is included herewith.

**PROCEDURAL HISTORY & STATEMENT OF FACTS**

The Court detailed the procedural history and facts of this litigation in its November 21, 2022 Opinion. *ECF#64*; Dalal v. United States Department of Justice, 2022 U.S. Dist. LEXIS 210074 (D.D.C. Nov. 21, 2022). Plaintiff adds the following facts which are relevant to the FBI's assertion of FOIA Exemption 7(A) and Plaintiff's state post-conviction relief proceedings.

Plaintiff was charged by the Bergen County, New Jersey Prosecutor's Office ("BCPO") in two separate indictments which were the result of the joint efforts of state law enforcement and the Federal Bureau of Investigation. Dalal v. Molinelli, 2021 U.S. Dist. LEXIS 61503 (D.N.J. March 30, 2021). One indictment alleged a series of graffiti and arson incidents involving synagogues. Id. at *2-3. This indictment resulted in a conviction and 35-year sentence. Id. Plaintiff's direct appeal was denied. State v. Dalal, 252 A.3d 204 (N.J. App. Div. 2021), certif. denied, 250 N.J. 500 (2022), certiorari denied, Dalal v. New Jersey, 143 S. Ct. 1757 (2023). Plaintiff then filed a petition for post conviction relief (PCR) under state law which is presently pending. Pl. Decl., Exh. "1".

On the day Plaintiff was set to be released on bail in the synagogue case, the BCPO brought new charges against Plaintiff claiming that he conspired with jailhouse informant Whendel Stewart to murder an assistant prosecutor. Dalal, 2021 U.S. Dist. LEXIS 61504 *3-4. This resulted in an additional $3 million bail. Id. The case was eventually dismissed. Id. at *7. Thereafter, Plaintiff brought a civil rights lawsuit against members of the BCPO and the FBI for malicious prosecution, fabrication of evidence, and conspiracy to violate civil rights. Id.

Plaintiff moved to modify a Privacy Act Order entered in the civil rights lawsuit to permit him to use documents disclosed by the FBI and the deposition testimony of FBI Special Agents, including FBI Special Agent Corey Coleman, in his state PCR proceedings for the purpose of demonstrating violations of his constitutional rights. Pl. Decl., Exh. "1". The United States did not oppose Plaintiff's use of the FBI documents in Plaintiff's PCR proceedings, but opposed the use of deposition testimony. Id. at 1-2. The Hon. Leda Dunn Wettre, U.S.M.J. granted Plaintiff's motion in full and permitting Plaintiff to use the FBI documents and deposition testimony in his PCR proceedings, finding that "Plaintiff has presented colorable arguments as to legitimate uses of the materials in the Superior Court Proceedings in his efforts to overturn his lengthy conviction, and his explanations are satisfactory to demonstrate that he does not seek modification of the Protective order for an improper purpose." Id. at 4.

## ARGUMENT

### I. The FBI has failed to demonstrate that searching for FBI Special Agent Corey S. Coleman's informant files would be unduly burdensome.

The FBI has again failed to demonstrate that asking FBI Special Agent Corey S. Coleman for the names of his informants would be unduly burdensome and accordingly, its motion for summary judgment should be denied. Despite the Court's direction to the FBI that it needed to contact Coleman to determine the number informants he used, the agency has against failed to do so. In its Opinion, the Court found as follows:

> "The FBI explains that it did not contact Special Agent Coleman about the requested informant files because, while Special Agent Coleman "would have written the initial suitability reports for his confidential informants, these reports then become a matter of record and are indexed and filed within the files of the informants and/or the investigative files of the subjects of the confidential

3

informant's report." Fourth Hardy Decl. ¶ 21. Fair enough. But the FBI seems to acknowledge that there is a way to find the requested documents: by "manually search[ing] through every single informant file worked by Mr. Coleman." Id. The FBI claims that "[s]uch a search would be unduly burdensome." Id. Maybe, but it has not made a sufficient showing of undue burden. See Pinson v. U.S. Dep't of Just., 80 F. Supp. 3d 211, 217 (D.D.C. 2015) (rejecting sufficiency of agency's assertion of undue burden when the agency had merely "state[d] that all Civil Division files would need to be searched" without including any "estimate of the time required to conduct [the] requested search, the cost of such a search, or the number of files that would have to be manually searched"). Perhaps the search "would require the agency to locate, review, redact, and arrange for inspection a vast quantity of material." Am. Fed. of Gov't Employees v. Dep't of Commerce, 907 F.2d 203, 209, 285 U.S. App. D.C. 133 (D.C. Cir. 1990). But for all the Court knows, Special Agent Coleman only had a handful of informants, and the search would take no time at all. Thus, the FBI will need to explain why such a search of the requested informant files would be unduly burdensome before the Court can agree."

Dalal, 2022 U.S. Dist. LEXIS 210074 * 13-15.

At this stage, the FBI has ignored the Court's decision and simply relied on conclusory claims and only stated that it would be burdensome for it to search the FBI's databases. Essentially, the FBI has just reiterated (in different terms) the exact same explanation the Court previously rejected. The FBI has made absolutely no effort to determine how many informants Coleman used by contacting Coleman. As the Court noted, it could be one informant and the subsequent search could take no time or effort at all.

## II. FOIA Exemption 5 and the deliberate process privilege do not apply to draft FBI 302 reports

The FBI claims that deliberative process privilege shields a draft FBI 302 report, but fails to meet its burden of demonstrating that the draft was pre-decisional. *ECF #89-3 at ¶¶ 11-14*. The FBI fails to identify what specific decision or policy this particular document preceded or how it played a role in the agency's deliberations regarding this

4

nonexistent decision or policy. The FBI only offers generalizations regarding the uses of FBI 302 reports, stating that they "are read and relied upon by other members of the investigative team (including other SAs), supervisors when making investigatory or other case related decisions, and prosecutors when considering criminal charges." *Id. at ¶ 12.* Significantly, the FBI explains that it already disclosed the final version of the 302 report in question to Plaintiff and waived any deliberate process privilege claims. *Id. at ¶ 11.* If the final 302 report was not pre-decisional and was not used as a part of any decisions or policymaking, the draft report certain could not have been either.

"Assessing whether a record is pre-decisional or deliberative necessarily requires identifying the decision (and the associated decisional process) to which the record pertains." Citizens for Resp. & Ethics in Wash. ("CREW") v. U.S. Dep't of Just., 45 F.4th 963, 972 (D.C. Cir. 2022). Here, the FBI has again failed to identify any concrete decisions that were made using the draft FBI 302 report. There is nothing to suggest it was even reviewed by a decision maker or a policy maker.

### III. FOIA Exemption 7(A) does not apply to Plaintiff's state post-conviction relief petition because release of the responsive documents would not "interfere" with the proceedings.

The FBI fails to provide any explanation of how, at this late stage in Plaintiff's state criminal proceedings, the release of any documents could reasonably be expected to interfere with the prosecution. All the agency offers is a conclusory statement, speculation, and conjecture. Any relevant witnesses are already known, having testified at Plaintiff's trial. It is submitted that Plaintiff's state PCR proceedings do not constitute an enforcement proceeding and that it is not reasonable to conclude that disclosure of FBI documents will interfere with these proceedings.

Plaintiff disputes that his state PCR proceedings constitute an enforcement proceeding for two reasons: (1) FOIA Exemption 7(A) concerns federal, not state enforcement proceedings and (2) Plaintiff's conviction is "final" and no court has yet determined that collateral proceedings constitute enforcement proceedings.

### A. State Post-Conviction Relief Petitions are not Enforcement Proceedings under Exemption 7(A).

Initially, Plaintiff disputes that his state PCR proceedings constitute an enforcement proceeding for three reasons: (1) There is no ongoing FBI investigation of Plaintiff; (2) FOIA Exemption 7(A) concerns federal, not state enforcement proceedings and (3) Plaintiff's conviction is "final" and no court has yet determined that collateral proceedings constitute enforcement proceedings. In a previous declaration, the FBI confirmed that "the investigation into Plaintiff and other third parties is not active…" *Fourth Hardy Decl. at ¶ 18.* As previously noted, the FBI has failed to prove that "the investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence." Juarez v. DOJ, 518 F.3d 54, 59 (D.C. Cir. 2008).

It is submitted that an ongoing PCR proceeding in state court concerning a state conviction is not the type of "enforcement proceeding" contemplated by FOIA. 5 U.S.C. § 552(b)(7)(A). FOIA exemptions are to be narrowly construed, Department of Air Force v. Rose, 425 U.S. 352, 361 (1976), and the purpose of Exemption 7(A) was to "prevent harm to the Government's case in court … by not allowing litigants earlier or greater access to agency investigatory files than they could otherwise have[.]" National Labor Relation Board v. Robbins Tire and Rubber Company, 437 U.S. 214, 225 (1978). The "Government" necessarily refers to the federal government. Any other construction of

Exemption 7(A) would allow federal agencies to withhold records by citing peripherally related state matters ranging from proceedings before a local zoning board to state administrative cases. An employee in the FBI's FOIA division has limited knowledge of such state and local proceedings and cases, and logically, cannot demonstrate or even know whether disclosure of specific information in federal records could result in any harm with regard to such matters.

The FBI cites Adionser v. Dep't of Justice, 811 F. Supp. 2d 284, 298 (D.D.C. 2011) for the proposition that a criminal appeal constitutes an enforcement proceeding. There, the ruled a federal criminal appeal was an enforcement proceeding. Id. Critically, the court noted the conviction had not become final until the end of the appeal: "Further, because co-defendant's conviction is not final, disclosure of the withheld materials could reasonably be expected to interfere with the ongoing criminal proceeding." Id.; See also Kansi v. U.S. Dep't of Justice, 11 F. Supp. 2d 42, 44 (D.D.C. 1998) ("The potential for interference with witnesses and highly sensitive evidence that drives the 7(A) exemption . . . . exists at least until plaintiff's conviction is final.) By contrast, Plaintiff conviction became "final" after the Supreme Court of the United States denied certiorari. Dalal v. New Jersey, 143 S. Ct. 1757 (2023) ; State ex rel. B.P.C., 421, N.J. Super. 329, 347 n. 5 (App. Div. 2011) ("A conviction is deemed final only when all avenues of direct appeal have been exhausted.")

**B.        Disclosure of FBI documents would not interfere with Plaintiff's state PCR proceedings.**

Exemption 7(A) is plainly inapplicable to the responsive records because disclosure could not reasonably be expected to interfere with Plaintiff's state PCR

proceedings. The FBI offers nothing more than a conclusory statement and a threadbare recital of Exemption 7(A):

> "The FBI advised in its Status Report on August 4, 2023, that release of any investigatory files would interfere with the law enforcement proceedings currently taking place because of Plaintiff's petition for post-conviction relief. As of the filing of this declaration, Plaintiff's post-conviction relief proceedings are active and ongoing, with a hearing currently scheduled in April 2024. As such, all records previously withheld under Exemption 7(A) should remain withheld under Exemption 7(A) because pre-mature release of these records could reasonably be expected to interfere with Plaintiff's post-conviction proceedings."

*ECF #89-3 at ¶ 16.*

This is not nearly enough as "it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; <u>it must rather demonstrate how disclosure will do so.</u>" <u>Citizens for Responsibility and Ethics in Washington v. DOJ</u>, 746 F.3d 1082, 1098 (D.C. Cir. 2014) (emphasis added). The FBI has completely failed to demonstrate how disclosure would interfere with the PCR proceedings as opposed to a pre-indictment investigation or pretrial proceedings. It is clear the FBI has failed to demonstrate that disclosure of the withheld documents "would, in some particular, discernable way, disrupt, impede, or otherwise harm" the PCR proceedings. <u>North v. Walsh</u>, 881 F.3d 1088, 1097 (D.C. Cir. 1989).

Courts have rejected these exact same conclusory statements by other federal law enforcement agencies when a FOIA requester-criminal defendant has already been tried, convicted, and sentenced. <u>Dugan v. DOJ</u>, 82 F. Supp. 3d 485, 499-501 (D.D.C. 2015) ("Given that plaintiff has already been prosecuted, convicted, and sentenced--and appears to have served his sentence, the Court needs considerably more information to conclude that the release of specific types of information will interfere with prospective or ongoing enforcement proceedings.") There, the court rejected a conclusory certification stating

8

records would "would reveal the scope, limits, and direction of the investigation." Id. at 500.

An analysis of the leading 7(A) case, National Labor Relations Board v. Robbins Tire and Rubber Company, involving the disclosure of witness testimony prior to a NLRB proceeding, is necessary in order to understand the impropriety of the FBI's categorical withholding of records. 437 U.S. 214 (1978). The United States Supreme Court, citing the legislative history of FOIA and Exemption 7(A), repeatedly noted that the purpose of the exemption was to prevent disclosure of witnesses' statements "prior to" legal proceedings. Id. at 225. The purpose of Exemption 7(A) was to "prevent harm to the Government's case in court … by not allowing litigants earlier or greater access to agency investigatory files than they would otherwise have". Id. (emphasis added). For good reason, this theme of prior and earlier disclosure was repeated throughout the opinion. Id. at 241 ("prehearing disclosure of witness statement would involve the kind of harm that Congress believed would constitute an 'interference' with NLRB enforcement proceedings."). Similarly, during the 1974 Senate debate regarding amendments to FOIA, Senator Hart focused on how "premature release of evidence or information not in the possession of known or potential defendants would harm the government's case in court." Campbell, 682 F.2d at 262. Senator Hart also noted that Exemption 7(A) would apply "where the agency could show that the disclosure of the information would substantially harm such proceedings by impeding any necessary investigation before the proceeding." Id.

The potential for witness tampering as a result of early disclosure was manifest in the context of an NLRB proceeding because "[h]istorically, the NLRB has provided little

9

prehearing discovery in unfair labor practice proceedings and has relied principally on statements … to prove its case." Robbins Tire, 437 U.S. at 236. By contrast, criminal discovery, mandated by individual states, through statutes and court rules, and the United States Constitution, e.g., Brady v. Maryland, 373 U.S. 83 (1963), is far broader. So too is discovery in a federal civil rights case. See Fed. R. Civ. P. 26 to 36. Prior to an NLRB proceeding, unions or employers could "coerce of intimidate employees and others who have given statements, in an effort to make them change their testimony or not testify at all." Robbins Tire, 437 U.S. at 239. The court was careful to note that this "special danger flow[ed] from prehearing discovery in NLRB proceedings." Id. The "vast majority" of NLRB proceedings were resolved short of a hearing "without any need to disclose witness statements" giving witnesses "some assurance that in most instances their statements will not be made public." Id. at 241. By contrast, in the criminal proceedings arising out of the joint federal and state investigations against Plaintiff, witnesses have already either testified or their names are already known to Plaintiff.

The FBI's explanations in its previous declarations, which it has incorporated by reference, may apply to ongoing investigations and at the pretrial stage, but have no bearing over a decade after the alleged crimes, a trial, sentencing, and direct appeal. The FBI would have the court believe these documents would reveal some phantom, hypothetical witness with material, inculpatory evidence, who for some reason never testified at Plaintiff's trial, who Plaintiff has no knowledge of, and who Plaintiff will threaten or intimidate to prevent from somehow being of use to state prosecutors in his PCR proceedings. This absurd line of speculation on top of conjecture is what the Court would have to accept to conclude Exemption 7(A) applies here.

A federal judge has already permitted Plaintiff to use documents disclosed by the FBI as a part of civil discovery in his PCR proceedings. Pl. Cert., Exh. "1". Contrary to the FBI's claims that the agency's documents would interfere with a proceeding, Judge Wettre found that Plaintiff had legitimate uses for the documents in his PCR proceedings. It is unclear how disclosure of these documents could possibly interfere with the proceedings, as there exists a "compelling judicial interest in sustaining only those convictions free from constitutional error", and "PCR is a defendant's last chance to raise constitutional error that may have affected the reliability of his or her criminal conviction." State v. Rue, 175 N.J. 1, 13, 18 (2002). "[T]he PCR procedure is not solely of interest to the convicted; the State and its citizens have an important interest in ensuring the fairness of criminal proceedings." State v. Berisha, 458 N.J. Super. 105, 113 (App. Div. 2019).

Furthermore, in its previous declarations, the FBI had claimed that both the dismissed case that is the focus of a civil rights lawsuit and the synagogue case now in PCR proceedings were "pending". Even as one case has been dismissed, the FBI fails to explain how records regarding that case are covered by Exemption 7(A).

Significantly, Plaintiff has already received discovery in his criminal case and more discovery in his civil lawsuit against FBI Special Agents. He has even deposed FBI Special Agent Corey Coleman. Pl. Cert., Exh. 1 at 2. Through extensive criminal and civil discovery and by virtue of his trial, Plaintiff already has knowledge of the witnesses who testified at his trial and the content of their testimony. Where the target of an investigation already has access to the information at issue, "the district court must conduct a more focused and particularized review of the documentation on which the

government bases its claims that the information [the requester] seeks would interfere with the investigation." Campbell v. Dep't Health & Human Servs, 682 F.2d 256, 265 (D.C. Cir. 1982); Swan v. Securities and Exchange Commission, 96 F.3d 498, 500 (D.C. Cir. 1996) ("If the target of the investigation, the one who might use the information to intimidate witnesses, destroy evidence, and so forth, already has the information, public access to it is unlikely to interfere with law enforcement proceedings."

## CONCLUSION

For the foregoing reasons, Mr. Dalal's Cross-Motion for Summary Judgment should be granted and the Defendants' Motion for Summary Judgment should be denied.

Respectfully submitted:

_____
Aakash Dalal,
Plaintiff, *pro se*

Dated: March 13, 2024

Aakash Dalal
SBI# 792652E
215 Burlington Road South
Bridgeton, NJ 08302
Plaintiff, *pro se*

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| AAKASH DALAL,<br><br>　　　　　　　Plaintiff,<br><br>Vs.<br><br>UNITED STATES DEPARTMENT OF JUSTICE and UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>　　　　　　　Defendants. | Civil Action No.: 16-cv-1040 (TJK)<br><br>**SECOND SUPPLEMENTAL DECLARATION OF PLAINTIFF AAKASH DALAL IN SUPPORT OF HIS CROSS-MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Aakash Dalal states as follows:

1. I am the Plaintiff in the above captioned matter and have full knowledge of the facts herein.

2. I incorporate by reference my two previous declarations in support of my previous cross-motion for summary judgment.

3. A true copy of the November 14, 2023 Letter Order of the Hon. Leda Dunn Wettre, U.S.M.J. in Dalal v. Molinelli, Civ. No.: 20-cv-01434 (D.N.J.) is appended as Exhibit "1".

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

　　　　　　　　　　　　　　　　　　　　　　　　　　Aakash Dalal,
　　　　　　　　　　　　　　　　　　　　　　　　　　Plaintiff, *pro se*

Dated: March 13, 2024